IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| TRACY L. GABBARD, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security ) <br> Administration, ) <br> ) <br> Respondent. ) <br> _____) | Case No. CV  07-117-S-MHW <br><br> MEMORANDUM DECISION <br> AND ORDER |

**Introduction**

Currently pending before the Court for its consideration is Petitioner Tracy L. Gabbard's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed March 7, 2007.  The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record (AR).  For the reasons that follow, the Court will affirm the decision of the Commissioner.

**I.
Procedural and Factual History**

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 14, 2004, alleging disability due to multiple sclerosis and club feet. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

MEMORANDUM DECISION AND ORDER - 1

Administrative Law Judge (ALJ) Hayward C. Reed held a hearing on July 26, 2006, taking testimony from Petitioner and vocational expert Polly Peterson. (AR 213-247). ALJ Reed issued a decision finding Petitioner not disabled on August 30, 2006. (AR 10-21).

Petitioner filed a timely appeal to the Appeals Council which denied her request for review, making the ALJ's decision the final decision of the Commissioner. (AR 9). Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 40 years old. She has a high school education and her past relevant work includes office manager and dispatcher.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's multiple sclerosis and club feet are "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was able to perform her past

MEMORANDUM DECISION AND ORDER - 2

relevant work as a dispatcher or office manager.  If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.  Having found Petitioner not disabled at step four, the ALJ did not proceed to step five.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 ((9th Cir. Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 ((9th Cir. Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 ((9th Cir. Cir. 1991).  Substantial evidence is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 ((9th Cir. Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 ((9th Cir. Cir. 1995).  Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Flaten*, 44 F.3d at 1457.  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel*, 188 F.3d 1087, 1089 ((9th Cir. Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 ((9th Cir. Cir. 1990).  Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence.  *Matthews v. Shalala*, 10 F.3d 678, 679-80 ((9th Cir. Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the fourth step of the sequential evaluation process. She specifically contends that the ALJ improperly rejected the opinions of Petitioner's treating physicians, Dr. Green and Dr. Schneider, and that an insufficient explanation was given for rejecting Petitioner's testimony concerning the intensity, persistence, and limiting effects of her symptoms. Because of the error concerning Petitioner's credibility, Petitioner claims that the hypothetical posed to the vocational expert did not account for all of her limitations. The Court will address each of these arguments in turn.

**A.     ALJ's Evaluation of Treating Physicians' Opinions.**

Petitioner argues that the ALJ erred in rejecting the functional limitations expressed in a 1996 letter authored by Petitioner's treating neurologist, Dr. Green, and the physical limitations described by Petitioner's treating orthopedist, Dr. Schneider. The Court has reviewed the evidence and the ALJ's conclusions, and finds that there is substantial evidence in the record to support the ALJ's determination.

Ninth circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 ((9th Cir. Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 ((9th Cir. Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*,

923 F.2d 1391, 1396 ((9th Cir. Cir.1991).  If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 ((9th Cir. Cir.1983).  In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 ((9th Cir. Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 ((9th Cir. Cir.1984).  The Commissioner must also provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  When an ALJ rejects the opinion of an examining doctor, the conclusion must be buttressed by specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 ((9th Cir. Cir.1995).

With regard to Dr. Green, the ALJ rejected the opinions he expressed in a letter written in 1996 concerning Petitioner's multiple sclerosis.  Petitioner was first diagnosed with multiple sclerosis in 1996.  (AR 110-114).  At that time, Dr. Green, Petitioner's neurologist, wrote a letter generally describing the symptoms and treatment for multiple sclerosis.  (AR 143-144).  He stated that "[f]atigue is a significant problem with Miss Gabbard in that she is totally exhausted by the time she is able to do even just the slightest amount of function around her home.  This is a very characteristic finding in patients with multiple sclerosis."  (AR 143).  He also described functional limitations with Petitioner's balance and coordination.  (AR 143).  On June 26, 2006, Dr. Green signed an acknowledgment stating that the "functional limitations described in [his previous] letter have not improved since 1996 and have gradually progressed."  (AR 142).

In this case, the ALJ articulated adequate reasons supported by substantial evidence in

MEMORANDUM DECISION AND ORDER - 6

the record for rejecting Dr. Green's opinions expressed in the 1996 letter.  The primary reason stated for rejecting the opinion of Dr. Green is that it was given in 1996, before the effects of Petitioner's disease were truly known.  As noted by the ALJ, Dr. Green described Petitioner's disease as "extremely benign," and over the course of treating her, he stated that the disease has not shown any active progression.  (AR 107-109).  The ALJ also relied upon MRI results in the record.  These test results show that Petitioner's disease is stable, with the most recent MRI taken on April 21, 2006, showing that her "lesion burden is unchanged" and there is no active enhancement of her disease.  (AR 145-146).  As a result of Petitioner's benign disease process, Dr. Green expressed in a letter dated April 21, 2005, that in his opinion, Petitioner's disability level was "a 1 or 2 on a scale of 0 to 10."  (AR 155).  Concerning her fatigue, Dr. Green also noted that Provigil "works quite well" to control those symptoms.  (AR 155).  As late as April 26, 2006, in a follow up visit with primary care physician Dr. Cothern, while Petitioner complained of some "aching" in her right shoulder she did not complain of any other fatigue symptoms or ask for treatment to address fatigue.  (AR 148-149).  Petitioner's multiple sclerosis has basically been treated conservatively, often with no treatment at all.  (AR 156).

  The ALJ also articulated adequate reasons for rejecting the opinions of Dr. Schneider as to the limiting effects of Petitioner's club feet.  On December 9, 2004, Dr. Schneider evaluated Petitioner's feet.  (AR 123-124).  At that examination, Petitioner stated that she was having increased difficulty with her feet.  Dr. Schneider felt that "[f]rom an orthopedic standpoint, [her club feet deformity] would significantly limit her ability to walk and stand.  I would feel that her standing and walking should be limited to five minutes at a time . . . [and] she would [not] tolerate any type of job that requires any walking."  (AR 123-124).  However, he prescribed

MEMORANDUM DECISION AND ORDER - 7

conservative treatment with prescription anti-inflammatory medication. (AR 123). The ALJ also noted that Petitioner's description of her daily activities was not consistent with a person who could not walk at all. (AR 20, 125-132). Finally, the record of Petitioner's follow-up care throughout 2005 and 2006 with Dr. Cothern indicates that she sought no specific treatment for or complained of debilitating symptoms related to her feet. (AR 148-151, 159-165).

Based upon the evidence in the record supporting the ALJ's reasons for rejecting the opinions of Petitioner's treating physicians, the Court concludes that the ALJ properly evaluated the opinions of Petitioner's doctors.

**B.      Petitioner's Credibility**.

Petitioner argues that there was an insufficient explanation given for rejecting her complaints and testimony. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 ((9th Cir. Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 ((9th Cir. Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 ((9th Cir. Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient, requiring the ALJ to identify what testimony is not credible

and what evidence undermines the claimant's complaints.  *Reddick v. Chater*, 157 F.3d 715, 722 ((9th Cir. Cir. 1998).  The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record.  *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 ((9th Cir. Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 ((9th Cir. Cir. 2002).  Also, the ALJ may consider:  location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms.  *See* Soc. Sec. Ruling 96-7p.

The ALJ noted that Petitioner's activities of daily living are inconsistent with the disabling foot pain and fatigue she claims.  The daily activities the ALJ referenced included the ability to do housework, care for herself and her children, and ride a bicycle for exercise.  (AR 64-78, 159).  The ALJ discussed that the Petitioner's treatment history and objective medical evidence did not suggest the presence of severe unrelenting fatigue or disabling functional limitations.  The record shows Petitioner failed to seek significant forms of treatment such as hospital confinement, emergency room treatment, or significant office care other than for routine maintenance or occasional complaints related to her multiple sclerosis.  Nor has she been prescribed long term medication for either her foot pain or multiple sclerosis.

MEMORANDUM DECISION AND ORDER - 9

The ALJ noted inconsistent statements between Petitioner's testimony and what she had previously told physicians, or rather not told them.  At the hearing, Petitioner testified that she had constant fatigue, requiring her to nap during the day.  However, she did not seek consistent treatment for her fatigue, and when she did, she reported it was controlled with medication.  (AR 107, 155, 156, 188).  She also testified at the hearing that her fatigue was the same as it was in 2002, when she was working full time as an office manager.  (AR 235).  Throughout 2005 and 2006, Petitioner sought regular treatment with Dr. Cothern but did not complain of disabling fatigue requiring treatment, nor did she seek follow up care after seeing Dr. Schneider for her foot pain.  (AR 148-151, 156-165).  The lack of any treatment belies her statement that her conditions have gotten worse.  (AR 235).  Lastly, Petitioner's physicians have stated that she was not completely precluded from work, only work that required significant walking or standing. (AR 123-124).

As stated above, it is the ALJ's job to determine credibility.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113 ((9th Cir. Cir. 1999).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 957, 959 ((9th Cir. Cir. 2002).   If the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 ((9th Cir. Cir. 1999).  The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound.   There is substantial evidence in the record to support the ALJ's finding that the Petitioner was not fully credible as the ALJ took into consideration the objective medical evidence, opinions of physicians that Petitioner was not precluded from all work, inconsistencies between the pain and fatigue she complained of and her daily activities,

inconsistent statements regarding her symptoms and limitations, and that extensive treatment was not sought or recommended.

The Court finds that, based on the above, there is substantial evidence in the record to support the ALJ's finding that Petitioner was not fully credible. While the Court may have weighted the evidence differently than did the ALJ, there is substantial evidence to support the ALJ's findings. It is not the function of this Court on review to disturb the Commissioner's decision.

C.  **Residual Functional Capacity to Do Past Relevant Work And Hypothetical Posed to Vocational Expert.**

Petitioner asserts that the ALJ's finding that she can perform light work, including her past work, is in error. The Petitioner contends that the ALJ improperly rejected her subjective complaints of the severity of her fatigue which would require her to miss significant amounts of work, thus precluding any work according to the vocational expert. (AR 16, 241).

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most she can do despite her limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 ((9th Cir. Cir. 2005). An ALJ must include all limitations

supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217.

The ALJ's residual functional capacity finding and the hypothetical he proposed to the vocational expert are supported by substantial evidence in the record. The AJL need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 ((9th Cir. Cir. 2000). In his hypothetical, the ALJ did include limitations imposed by Petitioner's multiple sclerosis and club feet, including limiting the amount she could lift or carry, walk, stand, and be exposed to temperature extremes. (AR 16, 243-245).

As for Petitioner's contentions that the ALJ did not address or consider her fatigue or that she would only be able to periodically work, these limitations are not supported by substantial evidence in the record and accordingly, the ALJ did not need to include them in his hypothetical or RFC determination. There are very few references to fatigue in the medical records and those very few references do not amount to substantial evidence for the ALJ to specifically include limiting factors of her fatigue in his hypothetical and RFC determination. Likewise, there is not substantial evidence in the record to support Petitioner's contention that she could only perform periodic work as a result of her fatigue.

Without substantial evidence in the record to support these limitations, the ALJ did not err in excluding them from his hypothetical. Additionally, the fact that the only evidence of these limitations are statements from the Petitioner whom the ALJ determined to not be fully credible is further support for the ALJ not affording the statements much weight in his determination. The ALJ then relied on the vocational expert's testimony, as permitted by the

MEMORANDUM DECISION AND ORDER - 12

regulations, regarding Petitioner's past light duty and sedentary work as an office manager and dispatcher. (AR 20-21.) *See* 20 C.F.R. § 404.1566(e).

The ALJ considered the record as a whole, incorporating his determination that Petitioner was not fully credible, and included the limitations supported by substantial evidence in the record. The law provides that the ALJ does not need to include unsupported limitations, which is precisely what occurred in this case.

## V.
## Conclusion

Based upon the foregoing, the Court being otherwise fully advised in the premises, IT IS HEREBY ORDERED that:

Plaintiff's Petition for Review (Docket No. 1) is **DENIED** and the Commissioner's determination **AFFIRMED**.



DATED: March 20, 2008

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge